CLARENCE WELLER, EXECUTOR; ETC., APPELLANT, v. E. L. WEAVER, ET AL., RESPONDENT.—100 S. W. (2d) 594.

Kansas City Court of Appeals. November 9, 1936.

402

*Smoot & Smoot, J. S. Tall, George N. Davis* and *J. H. Watkins* for appellant.

*Hiller & Hiller, Rendlen, White & Rendlen,* and *Lacy & Edwards* for respondents.

SPERRY, C.—Appellant was plaintiff below and sued respondents on a note in the principal sum of $3000, and for attorney fees as provided therein. Respondents admitted execution of the note and pleaded. payment. Thus the sole issue was whether the note had been paid. The jury so found and this appeal is duly prosecuted.

Respondents borrowed $3000 from Mittie B. Day and her husband who had since died. The interest was paid in June, 1932, and a few days later, respondents contended, the principal was paid in cash and a receipt was taken therefor. Afterward Mittie B. Day died and, the note being found among her effects, appellant, as executor, brought this suit.

On behalf of respondents, it was shown that Mittie B. Day demanded payment of the note in cash on June 17, 1932; that respondent E. L. Weaver procured $1000 from his sister in Keokuk, Iowa, $1000 of his own money from a lock box in Keokuk, $880 from his son, and $150 from his mother, and wrapped it in packages of $500 in his home on June 18, 1932, in the presence of Mrs. Weaver and Mrs. Cook. He went to the home of Mittie B. Day to pay said note and was told she had lost the note, or it had been stolen. He then sought the advice of Attorney Gridley who advised him to have his son, who was then county clerk, to take acknowledgment of the receipt. That night, in company with his son, and in her home, he paid Mittie B. Day the cash and took a receipt for same signed and acknowledged before respondents' son as county clerk. Respondent E. L. Weaver testified, without objection as to his qualification, his deposition having been previously taken by appellant and a part of said deposition having been introduced by appellant for purposes of impeachment. The county treasurer testified that Mrs. Day had told him, after the alleged payment, that she had received money from respondents and wanted to invest $2500 or $3000 in county warrants. Mrs. Cook to some extent corroborated this. Numerous handwriting experts of varying degrees of ability identified the signature on the receipt as being genuine. Robert Weaver testified to being present when the money was paid and receipt taken.

Appellant challenged the genuineness of the receipt in evidence and numerous handwriting experts, as well as people personally familiar with deceased's handwriting, testified that the signature on the receipt was a forgery. The probate judge testified that respondent E. L. Weaver told him in May following the death of Mittie B. Day: "I guess I will have to dig up," referring to the note which had been inventoried in her estate, and after Weaver had examined the inventory.

One ground urged here for reversal is that there is insufficient evidence to support a verdict for respondents. There was substantial evidence offered on both sides of the case. This is the very kind of case that causes courts to be thankful for the institution in our law known as the jury, for in such cases the jury is the sole judge of the weight and credibility of the evidence, and its verdict, in a case like this, cannot be disturbed on appeal. [Rexford v. Phillippi et al., 84 S. W. (2d) 628; Davison v. Dunham et al., 183 S. W. 690, 1. c. 691.] Appellant did not ask an instructed verdict below. Furthermore, the abstract of the record shows on its face that it is in piecemeal and has been supplemented twice and patched again. The bill of exceptions is abbreviated. In such case it is doubtful if the state of the record would support a determination on this point, even if there appeared reasonable grounds therefor. There is no merit to this contention.

It is urged that appellant, plaintiff below, should have been permitted to open and close the argument. Respondents opened and closed the case. No proper exception to this proceeding was ever laid below, hence there is nothing for this court to review on this point. For guidance in future, however, let it be said that where the entire case of plaintiff is admitted, and the defense is by new matter in avoidance, the rule is changed and defendant, having assumed the entire burden, shall open and close. That is this case. [Reis v. Epperson, 143 Mo. App. 90, 1. c. 91; Fuller Company v. Wholesale Drug Co., 219 Mo. App. 519, 1. c. 537.] Where the jury is instructed that they shall find for plaintiff unless they find the facts predicated in the instructions to be proved by defendant, defendant has the burden and "he who holds the laboring oar" shall have the right to open and close the argument. [Lafayette County Bank v. Metcalf, 20 Mo. App. 384, 1. c. 397; Dorrell, Admr., v. Sparks, Extr., 142 Mo. App. 460, 1. c. 465.] But even if appellant had been denied a right, which we hold he did not have in this case, it is not necessarily reversible. It is within the sound discretion of the trial court and unless complaining party is shown to have suffered substantial injury or the issues were close with the jury, the case will not be reversed on this ground alone. Here the verdict of the jury was unanimous. While the record fails to show proper exceptions saved, this decision is not placed on the state of the record but because the proper procedure was followed.

We now reach a more serious complaint, that Bert Gridley, a lawyer, was permitted to testify over strenuous objection, that he told respondent E. L. Weaver, out of the presence of deceased or plaintiff, to get his son to take the acknowledgment of Mittie B. Day to a receipt for payment of the money on the note, that Weaver sought his legal advice on how to proceed to pay the note in question which respondent told him had been lost. In fact, witness Gridley, by deposition, was permitted to detail a complete conversation had between the witness and Weaver on June 18, 1932, the day the note is alleged to have been paid. If it was error to admit this evidence, then it was reversible error; for such evidence would have telling effect on the jury.

At the outset we stated that respondent E. L. Weaver was permitted to testify without objection as to his competency. But he could only be permitted to testify, over objection, to matters properly admissible. This waiver went only to his competency as a witness; not to the competency of his evidence unless such evidence was in fact competent and admissible. Appellant objected to evidence of Weaver himself as to his conversation with Gridley. This objection was sustained. Therefore, when proper objections were made to the evidence of Gridley wherein his conversation with Weaver outside of the presence and hearing of appellant or deceased was detailed, it cannot be said that such evidence is admissible as corroborative of Weaver on material admissible points unless Weaver's evidence in that connection is material and admissible. Evidence of declarations made by a party in his own interest are ordinarily self-serving and inadmissible. [Tuite v. Woodmen Circle, 193 Mo. App. 619, l. c. 624; Steltemeier v. Barrett, 115 Mo. App. 323, l. c. 326.] That this is the general rule there can be no doubt. We recognize the existence of important exceptions to this rule but the question is whether the instant case presents such an exception. We have found no authority so holding nor have any been cited by respondents.

What respondent E. L. Weaver told Gridley regarding the note being lost and his intentions as to the method and manner of payment does no tend to prove the note was lost nor that he did in fact pay it, but constitutes declarations in his interest. Declarations or statements, oral or written, made by a party in his own interest, the proof of which will aid his cause, are considered self-serving and inadmissible. [22 C. J. 220; Steltemeier v. Barrett, 115 Mo. App. 323, l. c. 326; O'Day v. Annex Realty Co., 191 S. W. 41, l. c. 46.]

One exception to the rule is where the declarations are a part of the *res gestae*. That is not true here for the declarations are not claimed to be contemporaneous with the act of payment. [Gorham v. Anerswald, 53 Mo. App. 131, l. c. 134.] The nearest related exceptions to the general rule of exclusion of declarations is where

same tended to show the rights, liabilities and *status* of declarant. Such declarations are admitted where they tend to *limit* the rights of declarant rather than to *extend* them or to adversely affect the rights of other parties, not where they aided declarant. [Funsten v. Snyder, 14 Mo. App. 446.]

It was proper to prove that the note was in fact lost or mislaid, that being a link in the chain of circumstances tending to prove the method and manner of payment. But to hold that respondents may establish a disputed material fact in the case by showing, by his own evidence or that of his own attorney, that he told the attorney, outside the presence of any adversary, at a different time and place from that of the alleged payment, that said note was lost, would be to permit the building of an ironclad defense to any such action as this. His declaration, as repeated by the attorney, was not proper evidence of the fact sought to be established. The strength of such a case would depend upon the number and credibility of the witnesses to whom the story was told. It is not permissible for him to show by his own evidence, or by that of his attorney, that he intended to pay the note. Proof of payment is not aided by proof of payor's expressed intention to pay. It has never been so considered. Especially would this be true where the attorney's advice was predicated solely upon declarant's statements to him. Evidence of intention may sometimes be shown, especially in fraud and criminal cases; but this is neither a fraud nor a criminal case. The expressed intention was another declaration in his own interest. We hold it to be error to permit the proof of disputed, material facts by any sort of declaration of a party at interest, such as in this case. This admission in evidence of these declarations of Weaver through proof of them by the evidence of Gridley was prejudicial error. This entire line of evidence is a further departure from the usual rules than has yet been sanctioned and opens the door to the rankest kind of fraud. A precedent once established becomes a precedent for the dishonest litigant as well as the honest one. Thus, the law sometimes works a seeming hardship on some; but it is to the end that the law itself may not point the way and sanctify injustice to the many.

There was another class of evidence offered and admitted, of which complaint is made, namely, the promissory notes of Weaver to his son and his sister; the evidence of witnesses tending to prove that he borrowed in cash, on the date of the alleged payment, some $2030 in all; the evidence that he took $1000 of his own cash from a lock box at Keokuk, together with the corroborating evidence of his daughter, his sister and the banker; and the lock box slip showing authority for the visit to the vault and the date thereof. All of this evidence was offered for the purpose of proving respondents were financially able to pay in cash on the date alleged. A wide latitude

is given in the field of evidence in this class of case. It has been said: "The spirit of modern jurisprudence is in keeping with that of modern science and aims to receive light and information, for all that it is worth, from whatever source it may come." [State v. Loney, 82 Mo. 82, l. c. 85.] This is the especially favored doctrine in cases of fraud, or wherever a question of payment, such as in this case, is involved. 48 Corpus Juris, 717, states the rule as follows: "Subject to the rules governing the *relevancy, materiality, competency* and *admissibility* of evidence generally, and to the rules governing proof of payment and nonpayment, when the issue of nonpayment has been properly raised, any circumstance which tends to make the proposition of payment either more or less probable is relevant and admissible on the issue of payment, as is every link in a chain of circumstances tending to show payment." (Italics ours.) Bearing in mind that this does not abrogate *all* of the rules of evidence, we find many instances where proof of financial ability to meet a given obligation has been permitted by introduction of notes, accounts, bank statements, and other collateral evidence of such ability. Indeed such is the accepted rule for it is considered a link in the chain of circumstances tending to prove the disputed ultimate fact of payment. [Vogt v. Butler, 105 Mo. 479, l. c. 485; Estes v. Fry, 22 Mo. App. 53, l. c. 57; Lust v. Lust, 202 S. W. 564, l. c. 566; Funsten v. Snyder, 14 Mo. App. 446.] We think the character of evidence received on this point is in accord with that offered in many similar cases and approved by our courts. We are not holding, however, that conversations between witnesses, while such transactions are going forward, are admissible; for proof of financial ability to pay is not aided by declarations of debtor that he intends to pay.

Complaint is made that declarations of Mittie B. Day, relative to the note in question, should have been received in evidence. Declarations which are of a self-serving character are not validated and made admissible by the death of declarant thereafter, unless they are admissible because of some other exception to the general rule in that respect. We see no such exception in this case. [Perry's Administrator v. Roberts, 17 Mo. 36.] Of course, evidence of other witnesses who saw the note in her possession would be admissible. Declarations of a party *against* interest are admissible, such as the statement of deceased to Howard Brewster that she wanted the note paid and paid in cash.

Complaint is made concerning one of the instructions but we cannot find any such numbered instruction, either given or refused, in the record. The point is not mentioned in argument, nor it is briefed. We are not informed of the reason for complaint nor is the

defect complained of pointed out. In such case there is nothing to review.

Judgment is reversed and cause remanded. *Campbell, C.,* concurs.

PER CURIAM:—The foregoing opinion of SPERRY, C., is adopted as the opinion of the court; judgment is reversed and cause remanded. All concur.